[No. D026021. Fourth Dist., Div. One. Jan. 20, 1999.]

JOHN ROES, Plaintiff and Appellant v.
WILLIAM WONG et al., Defendants and Appellants.

**Counsel**

Fagan & Fagan, Craig P. Fagan and Stuart E. Fagan for Plaintiff and Appellant.

Purdy & Herron, Charles E. Purdy IV and T. Hall Brehme IV for Defendants and Appellants.

## OPINION

**McINTYRE, J.**—The question presented here is whether a junior lienholder in real property, who assumes senior indebtedness to preserve his equity in that property, is entitled to assert the usury laws against the senior lenders. Applying the constitutional and statutory prohibitions against usury, which are for the benefit of the borrower or a personal representative of the borrower, we answer this question in the negative.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Bradley Holcom was a licensed real estate agent who arranged the sale of trust deeds for clients looking to invest in loans for the development of real property. Plaintiff John Roes approached Holcom about investing in trust deeds and, from 1991 to 1993, purchased interests in a number of properties through Holcom.

In May 1992, Holcom arranged two $179,000 construction loans to Luz Maria Garcia for the development of two properties in Calexico, California. Defendants William and Doris Wong, William Wong and Associates, Inc., funded one of the loans, and defendants Eugene and Blanche Wilson, individually and as trustees of the Wilson Family Trusts (collectively with the Wongs, the holders of the senior note), funded the other. Each loan was reflected by a promissory note, secured by one of the two properties; each note provided for interest at 15 percent (the senior notes). Holcom also personally made two loans, totaling $50,000, to Garcia for the development of the two properties. Each of the Holcom loans was secured by a second trust deed on the relevant property (the junior notes). The junior notes provided for interest at 15 percent.[1]

Less than one month later, at a time when Holcom was aware of potential problems with the development of the properties, Holcom sold his interests in the junior notes and the second trust deeds securing them to Roes for $43,000. Garcia defaulted in the repayment of the loans and the holders of the senior notes threatened foreclosure. Roes paid interest, costs and penalties to the holders of the senior note to avoid losing his investment in the

---

[1]At trial, Holcom contended that the junior notes reflected broker loans and were thus not subject to the usury laws. The trial court found to the contrary and there is no challenge to the court's finding in this regard.

properties and ultimately obtained financing that permitted him to pay off the senior notes. He brought this action against the holders of the senior note, seeking to recover treble damages for the interest paid thereunder.[2]

## DISCUSSION

The law of usury in California is based upon California Constitution, article XV, section 1, which provides "[n]o person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action." (See also Civ. Code, §§ 1916-1, 1916-2.)

California's usury proscription is also set forth in an initiative measure that was adopted by the voters, but not codified; the measure is published in Civil Code sections 1916-1 through 1916-5. (Stats. 1919, p. lxxxiii, § 3.) Civil Code section 1916-3, subdivision (a) provides "[e]very person . . . who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under [the initiative provisions] may either in person or his or its personal representative, recover in an action at law against the person . . . who shall have taken or received the same . . . treble the amount of the money so paid or value delivered in violation of [those provisions] . . . ."[3]

■ The constitutional prohibition against usury clearly inures to the benefit of one who is a borrower within the meaning of the usury law. (E.g., *Ames* v. *Occidental Life Ins. Co.* (1930) 210 Cal. 271, 273-274 [291 P. 182].) Additionally, a person acting in a representative capacity of the borrower is permitted to challenge the usurious nature of the borrower's obligations. For example, a bankruptcy receiver for an insolvent borrower acts as a legal representative of the borrower in connection with assets and liabilities in the bankruptcy estate, including a usurious loan, and may thus assert usury on the borrower's behalf. (See *Scott* v. *Hollingsworth* (1932) 215 Cal. 314 [9 P.2d 836, 82 A.L.R. 995]; *North* v. *Cecil B. DeMille Productions, Inc.* (1934) 2 Cal.2d 55 [39 P.2d 199].) The executor of a deceased borrower's estate likewise has standing to assert usury. (*Barnes* v. *Hartman* (1966) 246

---

[2]Roes also alleged fraud, breach of fiduciary duty and negligent misrepresentation against Holcom and the trial court awarded Roes $107,569.24 in damages on those claims. Holcom did not appeal.

[3]The initiative measure, which was adopted in 1918, remains in full force to the extent that it does not conflict with the subsequently adopted constitutional provision. (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 170-178 [74 P.2d 252].) We refer to the constitutional and the initiative provisions collectively as the "usury law."

Cal.App.2d 215, 219 [54 Cal.Rptr. 514].) Similarly, a corporate alter ego of the borrower is permitted to assert usury as a defense in an action by the lender on a usurious note. (*Acceptance Corp.* v. *F. D. Tuttle, Inc.* (1930) 210 Cal. 51 [290 P. 574].)

It is well established that "one not a party to an usurious contract, may not, for this cause, invalidate it. . . . The reason is [quite] obvious. The law of usury was made to prevent oppression, and to rescue the party oppressed; but it never was intended for the benefit of those who are not and cannot be injured by an usurious transaction." (*Matthews* v. *Ormerd* (1903) 140 Cal. 578, 582 [74 P. 136], quoting *Reading* v. *Weston* (1829) 7 Conn. 409; see also *Roesch* v. *De Mota* (1944) 24 Cal.2d 563, 574 [150 P.2d 422].)

Accordingly, the usury law has not been applied for the benefit of persons other than the borrower or its representatives. For example, one who purchases a borrower's interest in the property securing a usurious note and takes the property subject to the note cannot bring an action to recover the usurious interest paid. (See *Matthews* v. *Ormerd, supra,* 140 Cal. 578; *Esposti* v. *Rivers Brothers, Inc.* (1929) 207 Cal. 570, 572-573 [279 P. 423]; *Read* v. *Mortgage Guarantee Co.* (1936) 11 Cal.App.2d 137, 142-143 [53 P.2d 377].) The rationale for this conclusion is that where one purchases the property subject to the usurious loan, the law presumes that the mortgage was considered in fixing the purchase price to be paid to the borrower, such that the usurious interest is factored in as part of the purchase price. In this context, recognizing a claim for usury would give the purchaser a better deal than the one he made. (*Matthews* v. *Ormerd, supra,* 140 Cal. at p. 581; see also *Esposti* v. *Rivers Brothers, Inc., supra,* 207 Cal. at p. 572.)

Based on similar reasoning, it has been held that the holder of a junior encumbrance who pays off the senior lienholder to stave off foreclosure on the senior indebtedness may not assert a claim for usury. (*Barnes* v. *Hartman* (1966) 246 Cal.App.2d 215, 223 [54 Cal.Rptr. 514].) There, the court concluded that, in the case of a default of a senior encumbrance, ". . . the holder of the junior encumbrance must decide whether to lose his estate in the encumbranced property or pay whatever is necessary to satisfy the holder of the senior encumbrance. By satisfying the demands of the holder of the senior encumbrance, even though the senior loan is usurious in nature, the holder of the junior encumbrance does not have a cause of action for usury. . . . The obvious and cogent reason for this rule of law is that the party or his personal representative asserting the claim of usury must be personally obligated on the promissory note or indebtedness." (*Id.* at pp.

223-224.)[4] Because the junior lienholder is not directly liable for the original loan and does not act in a representative capacity on behalf of the borrower, he does not have standing to assert usury.[5]

Roes nonetheless asserts that the decision in *Roesch* v. *De Mota, supra,* 24 Cal.2d 563, establishes his standing to assert usury. There, the California Supreme Court held that the trial court erred in denying a usury defense to a corporation that had received the borrower's property and the usurious note secured thereby in exchange for shares of the corporation's stock. The court relied on *Acceptance Corp.* v. *F. D. Tuttle, Inc., supra,* 210 Cal. 51, which involved a corporate alter ego of the borrower, but did not refer to the existence of an alter ego identity between the corporation and the borrower. Rather, it held that the corporation was in a different position than a person who purchases the borrower's interest in the property subject to a usurious note because, by receiving the borrower's interest in exchange for its stock, the corporation became substituted in the place of the borrower.

Admittedly, we cannot reconcile the decision in *Roesch* with the line of authorities limiting the protections of the constitutional and statutory usury provisions to borrowers or their personal representatives; in fact, we question the continuing viability of its holding in light of these other authorities. In any event, however, *Roesch* is factually distinguishable and its analysis does not establish standing on the part of a junior lienholder to assert usury.

In accordance with established precedent, Roes, as a junior lienholder, is not entitled to assert the protections of the usury law. Accordingly, he cannot recover damages based on the usurious nature of the senior notes, and the judgment in his favor must be reversed. The remaining issues raised in the appeals are moot.

---

[4]There are a number of published authorities in which a junior lienholder or other assignee of the borrower successfully asserted a usury claim or defense. (See *Garms* v. *Jensen* (1894) 103 Cal. 374 [37 P. 337]; *Nuckolls* v. *Bank of California* (1937) 10 Cal.2d 278 [74 P.2d 271]; *Roesch* v. *De Mota, supra,* 24 Cal.2d at p. 572; *Riebe* v. *Budget Financial Corp.* (1968) 264 Cal.App.2d 576, 579-580 [70 Cal.Rptr. 654].) However, because the issue of the standing of the junior lienholder to assert usury was not raised or addressed in these decisions, they cannot be cited as authority that such standing exists. (See, e.g., *McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)

[5]Two cases suggest that a guarantor also benefits from the protections of the usury law. In *Martin* v. *Ajax Construction Co.* (1954) 124 Cal.App.2d 425 [269 P.2d 132], the appellate court stated that ". . . the vices of the [loan] instrument may be asserted by its guarantors as well as by the maker." (*Id.* at p. 431; see also *Sosin* v. *Richardson* (1962) 210 Cal.App.2d 258, 266 [26 Cal.Rptr. 610], citing *Martin.*) However, the opinion neither cites authority nor sets forth any analysis in support of this conclusion. Where a lender is entitled to pursue a guarantor directly in the event of a default, rather than first seeking recovery from the borrower, a valid argument exists that the guarantor is personally obligated on the loan and thus may assert remedies under the usury law. Clearly, however, these cases are factually distinguishable from the case at bar and, based on the factual differences, are inapposite.

DISPOSITION

The judgment is reversed. The trial court is ordered to vacate the judgment and enter a new judgment in favor of the holders of the senior note. The holders of the senior note are to recover their costs on appeal.

Haller, Acting P. J., concurred.

**McDONALD, J.,** Concurring.—I agree with the majority opinion that John Roes (Roes) may not in this case assert a claim of usury against the holder of the senior trust deeds to which Roes paid usurious interest to protect his subordinate trust deeds. However, I do not agree with the blanket statement of the majority opinion that a junior trust deed holder may never assert a usury claim against a senior trust deed holder.

As stated in 4 Miller and Starr, California Real Estate (2d ed. 1989) section 10:4, page 656: "The public policy of the Usury Law is to protect the necessitous, impecunious borrower who is unable to acquire credit from the usual sources and is forced by his economic circumstances to resort to excessively costly funds to meet his financial needs. [Fn. omitted.]" In this case Roes, as an investment, purchased at a discount the subordinate notes secured by second trust deeds. At the time of the purchase, he knew, or should have known, that the trust deeds he purchased were subordinate to senior trust deeds securing usurious notes. Under these circumstances, the discounted purchase price must be deemed to reflect his appreciation of the usurious interest he may have to pay the holder of the senior trust deeds to protect his equity in the second trust deeds.

Roes is not an impecunious borrower who needs the protection of the usury law and he therefore is not entitled to use the usury law as a sword to obtain treble the amount of interest paid on the senior notes. There may, however, be situations in which the junior trust deed holder is entitled to usury protection and we should not foreclose that protection in cases not before us.